IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL HEMPHILL**          )<br>　　　　Plaintiff,　　　　　　　)<br>　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　)　Civil Case No. RWT 06-274<br>　　　　　　　　　　　　　　　)<br>**SAFEWAY, INC.**　　　　　　　)<br>　　　　Defendant.　　　　　　　) | |

### MEMORANDUM OPINION

On September 9, 2003 at Safeway Store 1342 in Olney, Maryland, Plaintiff Michael Hemphill ("Hemphill"), an African-American employee of Defendant Safeway, Inc. ("Safeway"), engaged in a fight with Vladimir Bregvadze, an employee of a custodial contractor who worked in the same store. After an investigation, Safeway terminated Hemphill's employment on October 8, 2003. On July 28, 2005, Hemphill filed an action for racial discrimination under the Montgomery County Code as authorized by Maryland law in the Circuit Court for Montgomery County. Safeway subsequently removed the case to this Court. The Court has previously ruled on Hemphill's Motion to Remand the case to state court, which was denied by order of the Court on April 20, 2006. See Paper Nos. 20 & 21. Safeway has now moved for summary judgment. For the reasons stated herein, Safeway's motion will be granted by a separate order.

**I.　　FACTUAL BACKGROUND**

Hemphill has been a Safeway employee since October 26, 1975, and he is a member of the United Food and Commercial Workers Union Local 400. During his employment, Hemphill received various employee policies from Safeway, including Safeway's Workplace Violence Policy. The Workplace Violence Policy, in relevant part, states:

> Acts and/or threats of violence by any employee will not be tolerated and will be grounds for disciplinary action up to and including termination. Similarly, acts and/or threats of violence by non-employees against Safeway employees as a result of, or in connection with, their work for or on behalf of Safeway also will not be tolerated and appropriate corrective action will be taken
>
> …
>
> Appropriate corrective action includes, but is not limited to, discipline up to and including termination of employment and criminal prosecution.
>
> …
>
> . . . Any employee or person who [has been the subject of actual or threatened violence, observed, or learned of such conduct] . . . shall report such incidents to the Store Manager.

Def. Mem. Attach. Ex. 5. Hemphill acknowledged that he received the policy, among others, on November 9, 2001.

It is undisputed that on the night of September 9, 2003, Hemphill and Mr. Bregvadze engaged in a scuffle. Hemphill alleges he was acting in self-defense after being attacked by Mr. Bregvadze. Safeway never formally determined which man was the aggressor. However, an investigation by Safeway Human Resources Advisor, Lucy Madert, and Safeway Security Investigator, Craig Kesler, revealed that both Hemphill and Mr. Bregvadze violated the workplace policy.[1] Based on the investigation, Safeway terminated Hemphill's employment effective October 8, 2003. Safeway could not terminate Mr. Bregvadze's employment because he was the employee of a contractor and not an employee of Safeway, but it banned Mr. Bregvadze from being able to provide services in any of its stores.

Hemphill believed that his discharge was the result of discrimination and filed a grievance with his labor union, the Local 400. Upon a review of Hemphill's grievance, the union found that according to the account of two witness, Hemphill punched Mr. Bregvadze and threw a jar of salsa at his head, and that Hemphill made an additional threat "to go outside and finish

---

[1] During the investigation, two witnesses and Mr. Bregvadze identified Hemphill as the aggressor. Only Hemphill portrayed Mr. Bregvadze as the instigator.

this thing" in the presence of the Head Night Stocker. The union thus denied Hemphill's grievance because it found that Hemphill clearly violated the Workplace Violence Policy.

Hemphill also filed a claim for unemployment insurance with the Maryland Department of Labor, Licensing, and Regulation ("Labor Department"), Division of Appeals, which determined that Hemphill was entitled to benefits.[2] Hemphill's health insurance provider also determined that he was terminated for "reasons other than gross misconduct," and allowed him to temporarily continue his health coverage through Consolidated Omnibus Budget Reconciliation Act (COBRA).

On November 18, 2004, Hemphill filed a charge with the Montgomery County Office of Human Rights ("OHR") alleging that his termination was the result of racial discrimination. On March 29, 2005, OHR terminated the investigation because it believed the complaint was not timely filed; however, on July 13, 2005, OHR reopened the investigation because it found a previous letter that had been filed within the one year statute of limitations.

On July 28, 2005, Hemphill filed suit in the Circuit Court of Montgomery County. OHR terminated the investigation and closed the case on November 30, 2005 because the complaint in the Circuit Court was identical to the complaint filed with OHR.

## II.   LEGAL STANDARDS

### A.   Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

---

[2]The Labor Department awarded benefits after determining that Hemphill's termination was not due to "gross misconduct," which would disqualify someone from unemployment benefits under Maryland law. See Md. Code Ann., Lab. & Empl. § 8-1002. Safeway, through its agent Talx UCM Services, Inc. ("Talx"), initially sought to appeal the decision of the Labor Department, but eventually chose not to do so. During the initial investigation, Talx, erroneously informed the Labor Department that Hemphill was fired for "unauthorized removal of company property." Upon realizing the mistake, Safeway, through Talx, promptly informed the Labor Department of the error and provided the true reason for termination.

matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). In so doing, the court must view the evidence in the light most favorable to the non-moving party. <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 302 (4th Cir. 2006). Summary judgment is proper, and "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

Once the moving party has made a showing that it is entitled to judgment as a matter of law, the burden is then upon the opposing party to demonstrate to the Court that there is a "genuine issue for trial." <u>Matsuhita Electric Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248 (1986). A dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u> (internal quotations omitted). "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1986).

**B.   The <u>McDonnell Douglas</u> Burden-Shifting Scheme**

Absent any direct evidence of discrimination, Maryland has adopted the familiar <u>McDonnell Douglas</u>[3] burden-shifting framework for cases involving employment discrimination. <u>State Com'n on Human Relations v. Kaydon Ring & Seal, Inc.</u>, 149 Md. App. 666, 676, 695, 818 A.2d 259, 265-66, 277 (Md. Ct. Spec. App. 2003). Absent legislative intent to the contrary, Maryland courts are guided by decisions interpreting Title VII in cases involving analogous local

---

[3] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

legislation. Id.; Brandon v. Molesworth, 104 Md. App. 167, 186 n. 16, 655 A.2d 1292, 1302 n. 16 (Md. Ct. Spec. App. 1995) ("[t]o resolve questions as to the proper interpretation of Art. 49B, Maryland courts have often found federal cases arising under Title VII to be persuasive")*(rev'd, in part, on other grounds*, Molesworth v. Brandon, 341 Md. 621, 672 A.2d 608 (Md. 1996)); see also Haas v. Lockheed Martin Corp., 396 Md. 469, 492, 914 A.2d 735, 749 (Md. 2007).

Under McDonnell Douglas, a plaintiff has to first establish a *prima facie* case of discrimination based on race. In the termination context, a plaintiff can make a *prima facie* case by proving: (1) that Plaintiff belongs to a protected minority group; (2) Plaintiff was discharged from employment; (3) at the time of the discharge, Plaintiff was performing his job at a level that met the employer's expectation, and (4) Plaintiff was discharged under circumstances raising a reasonable inference of intentional discrimination. Baquir v. Principi, 434 F.3d 733, 742 (4th Cir. 2006); Nerenberg v. RICA of S. Md., 131 Md. App. 646, 664, 750 A.2d 655, 663 (Md. Ct. Spec. App. 2000). For a disparate treatment claim, a plaintiff must demonstrate that (1) he is a member of the protected class, (2) an adverse employment action was taken against him, (3) employees of a different race or other protected class had engaged in conduct of comparable seriousness, and (4) the disciplinary measures imposed on those other employees were less severe than those imposed on him. See Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985).

If the Plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. Id. If the employer provides a sufficient, legitimate reason, the burden shifts back to the Plaintiff to show that the given reason is merely a pretext for discrimination. Levitz Furniture Corporation v. Prince George's County, 72 Md. App. 103, 112-13, 527 A.2d 813, 818 (Md. Ct. Spec. 1987) The

plaintiff, at all times, bears the burden of proving by a preponderance of the evidence that the Safeway intentionally discriminated against him. Id. at 113.

## III.   ANALYSIS

Under Federal Rule of Civil Procedure 8(f), this Court must construe the pleadings to do substantial justice. Plaintiff's complaint was originally filed with the assistance of counsel, and alleges only one count for employment discrimination in violation of the Montgomery County Code as authorized by Section 42 of Article 49B of the Maryland Code. King v. Marriot Int'l, Inc., 195 F. Supp.2d 720, 725 (D. Md. 2002)(Williams, J.). As developed in the moving papers, the Court construes Hemphill's complaint as asserting two theories of discrimination: 1) employment discrimination, and 2) disparate treatment. Both claims utilize the McDonnell Douglas framework when direct evidence of discrimination is not available. Kaydon Ring & Seal, Inc., 149 Md. App. at 676, 818 A.2d at 265-66; Maryland Shipbuilding & Drydock Co., Inc. v. Maryland Com'n on Human Relations, 70 Md. App. 538, 545, 521 A.2d 1263, 1266 (Md. Ct. Spec. App. 1987).

**A.   Hemphill Has Not Demonstrated A *Prima Facie* Case of Racial Discrimination.**

It is undisputed that Hemphill, as an African-American, belongs to a protected minority group and that he was discharged from his employment. Thus, the first two elements of the McDonnell Douglas test have been satisfied for Hemphill's discrimination claim. However, Hemphill has failed to satisfy the third and fourth elements, namely that he satisfied his employer's legitimate expectations and his discharge created an inference of racial discrimination.

*1. Hemphill Did Not Meet Safeway's Legitimate Expectations.*

Compliance with a Workplace Violence Policy is a legitimate expectation of any employer and has been held as an acceptable reason for termination. See Anders v. Waste Management of Wisconsin, Inc., 463 F.3d 670, 676 (7th Cir. 2006) (holding assault on manager suggested plaintiff did not meet employer's legitimate expectations), Adams v. Henderson, 166 F.3d 1208 (4th Cir. 1998) (unpublished table decision) (affirming lower court's decision finding physical altercation with another employee as a breach of employer's legitimate expectations); cf. Palmer v. Circuit Court of Cook Co., Ill., 117 F.3d 351, 352 (7th Cir. 1997) (Posner, J.) (finding a threat of violence, even if provoked by a mental illness, is a legitimate reason to terminate employment under the Americans with Disabilities Act). Safeway simply states – and it need say no more – that Hemphill broke its legitimate expectation of a violence-free workplace by engaging in a fight at work.[4] Quite simply, by engaging in a fight of work, in violation of the policy, which Hemphill admits he received and reviewed, he cannot honestly claim he was meeting even his employer's bare minimum expectations of not fighting at work.

The Court finds unpersuasive Hemphill's argument that the Unemployment Insurance Appeals Decision proves that he was satisfying his employer's expectation, as the issues before the Labor Department in that decision differ significantly from those currently before this Court. See Cicala v. Disability Review Bd. For Prince George's Co. et al., 288 Md. 254, 265, 418 A.2d 205, 212 (Md. 1980) That decision merely found that Hemphill did not engage in "gross misconduct" under Maryland law. However, under McDonnell Douglas, Safeway does not have to prove that Hemphill engaged in "gross misconduct:" it only has to demonstrate a non-discriminatory reason for terminating Hemphill's employment. Levitz, 72 Md. App. at 116, 527

---

[4] Indeed, Safeway provided Hemphill with a copy of its Workplace Violence Policy, which states: "Acts and/or threats of violence by any employee will not be tolerated and will be grounds for disciplinary action up to and including termination." See Def. Ex. 5

A.2d at 820 (holding the law does not protect terminations for bad reasons, mistaken reasons, or no reason at all as long as the decision was not based on unlawful discriminatory criteria).[5]

Hemphill's prior accolades also do not prove that Hemphill was meeting Safeway's legitimate expectations when he was terminated. Prior accolades do not necessarily create an inference that an employee was meeting the legitimate expectations of the employee. See Nerenberg, 131 Md. App. at 667 750 A.2d at 666-67 (citing Clay v. City of Chicago Dep't of Health, 143 F.3d 1092 (7th Cir. 1998). Although Hemphill received a "Way of the Beaver Pin," an accolade given to him in May 2003, it hardly shines any light on the action taken by Safeway after he engaged in a fight at work. Because Hemphill engaged in a fight at work, he has failed to prove that he was meeting Safeway's legitimate and well-communicated expectations of him.

*2. Hemphill's Discharge Does Not Create An Inference of Discrimination.*

A *prima facie* case is established when a member of a protected group is discharged under circumstances, which, if unexplained, would support an inference that the decision to discharge was based on impermissible factors. See Furnco Constr. Co. v. Waters, 438 U.S. 567, 577 (1978). Thus, even if Hemphill were meeting Safeway's legitimate expectations, the circumstances surrounding Hemphill's firing do not suggest that it was motivated by discrimination because Hemphill has not established that he was replaced by a person outside the protected class.

Hemphill alleges he was "acting grocery manager" while Mike Meriam, the permanent grocery manager, was out on medical leave, and that Meriam, who is white, resumed the position when he returned.[6] However, Safeway would have no need to fire Hemphill to make room for

---

[5] Hemphill's argument that his ability to continue on his health plan through COBRA somehow proves that he met his employer's expectations is similarly irrelevant.

[6] Safeway does not dispute this, but it seems questionable whether Hemphill was actually the "acting grocery manager" because in his deposition he said Bob Hart was in charge of the store, even while he was allegedly "acting grocery manager."

Meriam because Hemphill was only the *acting* grocery manager. Presumably, Meriam was going to return to his post as grocery manager irrespective of Hemphill's actions. Without evidence that Hemphill was replaced with a Caucasian employee, the Court cannot conclude that Safeway's motive for terminating Hemphill was racial discrimination.

Other *de minimis* discrepancies suggested by Hemphill also do not create an inference of discrimination. First, Hemphill claims that Talx, an agent of Safeway who manages Safeway's unemployment claims, erroneously stated to the State of Maryland Department of Labor that Hemphill was fired because he stole company property. However, this was an error that was quickly corrected, as demonstrated by documentation provided by Safeway, and it provided a termination notice that stated the true reason: violence in the work place.

Second, Hemphill suggests that by using its standard Employee Investigation form, Safeway improperly considered his race. This form, which was used in the investigation of the September 9, 2003 fight, simply contains a space to provide the race of a suspect. However, the form also allows for a variety of other information about the incident, including space for a narrative from the witnesses. The mere identification of Hemphill's race, absent any evidence of bias in the investigation, does not suggest discrimination may have played a role in terminating Hemphill.

Third, Hemphill alleges that Safeway erroneously sent him a "bogus check" after his termination, and that this is evidence of a conspiracy to fire Hemphill because he is Black. It appears from the documents provided by the Plaintiff that the "bogus check" allegedly sent by Safeway was actually a pay stub reflecting prior payments rendered to Hemphill. However, even if the check were "bogus" or accidentally sent to Hemphill, the Court fails to see how this could give rise to an inference of racial discrimination.     In sum, none of these issues raised by

Hemphill creates a genuine issue of material fact as to whether Safeway discriminated against him because of his race, and thus he has failed to prove a *prima facie* case of discrimination under Maryland law.

**B.      Hemphill Has Not Proven A *Prima Facie* Case of Disparate Treatment**

Like Hemphill's discrimination theory, it is undisputed that he has satisfied the first two elements of the McDonnell Douglas test as an African American who was discharged from employment. 411 U.S. 792, 802 (1973); Maryland Shipbuilding & Drydock Co., Inc., 70 Md. App. at 545, 521 A.2d at 1266. However, Hemphill has failed to demonstrate that employees of a difference race engaged in conduct of comparable seriousness, and that the disciplinary measures imposed on those employees were less severe than those imposed on him. Moore, 754 F.2d at 1105-06.

"It is fundamental that to make a comparison of a discrimination . . ., the plaintiff must show that the 'comparables' are similarly-situated *in all respects*." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992) (internal citation omitted; emphasis in original); see also White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir.1995); Zackrie v. Lockheed Martin, Corp., 2006 WL 2849767, at *4 (D.Md. 2006) (Titus, J.) (embracing this type of "similarly-situated" examination). Hemphill alleges that Caucasian employees at different stores in different areas at different times were treated differently after fighting on the job. At the outset, Hemphill's only evidence of these two White employees who allegedly were treated differently is from his own deposition. Assuming, *arguendo*, that Hemphill could produce admissible evidence for these claims, he still does not establish a *prima facie* case of disparate treatment.

Plaintiffs' evidence provides details for only two Safeway employees, neither of whom worked in the same facility as Hemphill and thus are not "similarly situated" to the Plaintiff. Pete

Stepp, a White Safeway employee in Alexandria, Virginia, allegedly punched or hit another employee, and was retained and even promoted to Retail Merchandiser. Stepp, however, worked in a different district, and Stepp's actions were not comparable to Hemphill's. John Ignacio, a White employee who worked in an Olney Store, allegedly got into a fight with a customer over 15 years ago, in January 1992, in an attempt to prevent a customer from shoplifting. These incidents are a far cry from the facts of this case, and do not demonstrate that Safeway treated "similarly situated" employees differently. See Mitchell, 964 F.2d at 583, White, 375 F.3d at 295, Zackrie, 2006 WL 2849767 at *4 . Finally, the mere fact that Mr. Bregvadze was not terminated but instead banned from working in a Safeway store cannot suggest disparate treatment. Mr. Bregvadze was not fired from Safeway because he did not work for Safeway; he was a contractor. Notably, Safeway punished Bregvadze with a stiff sanction – a ban from working at any Safeway store.

Because Hemphill cannot demonstrate that similarly situated employees were treated differently, Hemphill has failed to establish a *prima facie* case of disparate treatment.

**C.      Safeway's Reason for Terminating Hemphill Is Not Pretextual**

In the alternative, assuming *arguendo* that Hemphill could establish a *prima facie* case, Safeway has articulated a legitimate, non-discriminatory reason for terminating Hemphill's employment, namely that Hemphill violated the Safeway Workplace Violence Policy. Because Safeway has provided a legitimate, non-discriminatory reason for the termination, the burden shifts to the Hemphill *to prove by the preponderance of the evidence* that Safeway's reason is pretextual, and that Safeway's actions were in reality motivated by race. Levitz, 72 Md. App. at 113, 527 A.2d at 818 (emphasis added).

A Plaintiff cannot establish pretext "by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." See <u>Hux v. City of Newport News, Va.</u>, 451 F.3d 311, 355 (4th Cir. 2006).  As discussed in the previous section, these same reasons why Hemphill has failed to demonstrate a *prima facie* case are also the reasons why he has failed to demonstrate that Safeway's stated reason for termination was a pretext for race discrimination.  Hemphill's arguments are "minor discrepancies" at best and "do not cast doubt on" Safeway's explanation. Hemphill has failed to prove, by a preponderance of the evidence, that Safeway was motivated by an animus toward Hemphill because of his race.

## IV.   CONCLUSION

As stated herein, Hemphill has failed to make a *prima facie* case of either discrimination or disparate impact under Montgomery County Code as authorized by Article 49B of the Maryland code.   Safeway has provided a legitimate, non-discriminatory explanation for Hemphill's termination, which Hemphill has failed to counter.  There is nothing before the Court to demonstrate that Safeway's conduct was a mere pretext for discrimination. Accordingly, the Court will grant Defendant's motion by a separate order.

DATE: 7/24/07

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE